### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

PATRICK M. O'DONNELL, BRIAN
FIDANZATO,

Plaintiffs,

*vs.*

Nightlife, DBA Dusk, Red Stripe Planes Group,
James Wankmiller, Gary Veloric, Eric
Millstein, Kevin Friel, Craig Slotkin, Justin
Lotter, Kevin Scanlon, Chelsea Fleming,
Brooke Ashcroft, Ashley Costello, Amanda
Grill, Kelly Schweir, Sarrah Louise Dilenno,
Ashley Knight, Liana Williams and John Does
1-10 (a fictitious name for persons, firms or
corporations presently unknown),

Defendant(s).

**CIVIL ACTION NO.:**

### NOTICE OF REMOVAL

TO:   THE HONORABLE JUDGES OF THE
      UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF NEW JERSEY

Defendants, AC Nightlife, LLC (improperly pled as "Nightlife, DBA Dusk"), Red Stripe

Plane Group, LP (improperly pled as "Red Stripe Planes Group"), James Wankmiller, Gary

Veloric, Eric Millstein, Kevin Friel, Craig Slotkin, Justin Lotter, Kevin Scanlon, Chelsea

Fleming, Brooke Ashcroft, Ashley Costello, Amanda Grill, Kelly Schweir, Sarrah Louise

Dilenno, Ashley Knight and Liana Williams (hereinafter collectively "Defendants"), by and

through their undersigned attorneys, Constangy, Brooks & Smith, LLP, respectfully states:

1.      Plaintiffs, Patrick M. O'Donnell and Brian Fidanzato, commenced this action on

March 22, 2012 by filing a Complaint in the Superior Court of New Jersey, Law Division, Somerset

County, entitled <u>Patrick M. O'Donnell, Brian Fidanzato v. Nightlife, DBA Dusk, Red Stripe</u>

Planes Group, James Wankmiller, Gary Veloric, Eric Millstein, Kevin Friel, Craig Slotkin, Justin Lotter, Kevin Scanlon, Chelsea Fleming, Brooke Ashcroft, Ashley Costello, Amanda Grill, Kelly Schweir, Sarrah Louise Dilenno, Ashley Knight, Liana Williams and John Does 1-10 (a fictitious name for persons, firms or corporations presently unknown), Docket No. SOM-L-398-12.  Said action is now pending in that Court.

2.      Plaintiffs filed their first Complaint on or about March 22, 2012.  On June 12, 2012, Defendants filed a Motion to Dismiss the Complaint predicated upon a myriad of ambiguities in the initial Complaint which effectively denied Defendants the ability to review or analyze Plaintiffs' claims.  Plaintiffs voluntarily filed an Amended Complaint on June 19, 2012.  Due to the continued vagueness of the Complaint and in response to demands for clarification of the claims by Defendants, Plaintiffs again revised the pleading and filed a Second Amended Complaint on July 17, 2012.  Through their repeated revisions, Plaintiffs pointedly attempted to avoid pleading any federal causes of action.  Indeed, the Second Amended Complaint, on its face, did not plead any federal cause of action.  Accordingly, on August 23, 2012, Defendants filed an Answer in response to Plaintiffs' Second Amended Complaint.

3.      A copy of each of the foregoing papers, which constitutes all of the processes and pleadings to date, is annexed hereto collectively as Exhibit A.

4.      Discovery in this matter is in its nascent stages.  Plaintiffs have yet to serve any discovery requests upon Defendants and Defendants only recently served their discovery requests upon Plaintiffs.  Plaintiffs have not yet responded to Defendants' discovery requests.  Nor have they produced any documents to Defendants.  Through the course of investigation into this matter, however, Defendants learned that several of Plaintiffs' claims are necessarily and directly related to terms included in the Collective Bargaining Agreement between Local 54 (the Union to which

Plaintiffs belonged) and the employer.  The existence and applicability of this Collective Bargaining Agreement, which was recently discovered due to Defendants' own due diligence, is undisputable. Nevertheless, reference to the Collective Bargaining agreement is conspicuously absent from every one of the state common law and New Jersey Wage Payment Law claims contained in Plaintiffs' Second Amended Complaint.

     5.     Accordingly, the above-captioned action is a civil action over which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 and § 1337, and is one which may be removed to this Court by defendants pursuant to 28 U.S.C. § 1441, in that:

     a.     Through investigation in Plaintiffs' claims, it has become evident that, though Plaintiffs allege common law breach of the contract, common law fraud and New Jersey wage and hour violations without specifying a contract upon which they rely, the contract vaguely referred to is - and must be - the Collective Bargaining Agreement between AC Nightlife, LLC and the Union, Local 54.  By the Collective Bargaining Agreement's express terms, it is the sole document which exclusively governs those terms and conditions of Plaintiffs' employment which are at issue here.  Accordingly, Plaintiffs' claims allege a cause of action governed exclusively by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, et seq. ("LMRA").

     b.     This Court has original jurisdiction over the above-captioned action pursuant to the LMRA, which may properly be removed to this Court pursuant to 28 U.S.C. § 1441.

     c.     This Court has supplemental jurisdiction over Plaintiffs' state law and common law claims pursuant to 28 U.S.C. § 1367.

     6.     Defendants' counsel first received and reviewed the subject Collective Bargaining Agreement on September 26, 2012.  On this date, Defendants learned that Plaintiffs' claims are governed by the terms of a CBA.  Thus, this Notice of Removal is filed within the 30-day period

2060668.1

provided by 28 U.S.C. § 1446(b) and the Federal Rules of Civil Procedure. See Fenza's Auto, Inc. v. Montagnaro's, Inc., 2011 WL 1098993 at *11 (D.N.J. March 21, 2011) ("the time to remove under § 1446(b) begins to run when the circumstances described in the complaint combined with relevant information available to the defendant would demonstrate the basis for federal jurisdiction"); accord Moultrop v. GEICO General Ins. Co., 858 F.Supp.2d 1342, 1346 (S.D.Fla. April 25, 2012) ("a notice of removal must be filed in federal district court within thirty days after it is first ascertained that the case is removable"); Dougherty v. Petco Southwest, Inc., 2010 WL 2231996 at *5 (S.D.Tex. May 28, 2010) ("filing notice of removal is required when 'it may first be ascertained that the case is one which is or has become removable,' 28 U.S.C. § 1446 (emphasis added), not when a filing or "other paper" affirmed that the case is in fact removable"); Trustees of Masonic Hall and Asylum Fund v. Pricewaterhousecoopers LLP, 2009 WL 290543 at *6 (S.D.N.Y. Feb. 6, 2009) (citing, Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 206 (2d Cir. 2001)) ("Where the initial complaint 'obscure[s], omit[s], or misstate[s]' the grounds for removal, however, a defendant 'has thirty days from the revelation of grounds for removal to file a notice of removal'").

7.     Upon filing of this Notice of Removal, Defendants shall give written notice thereof to Michael R. O'Donnell, Esq., 66 Finderne Avenue, Bridgewater, New Jersey 08807, attorney for Plaintiffs, and Defendants shall file copies of said Notice of Removal with the Clerk, Superior Court of New Jersey, Law Division, Somerset County.

8.     By filing this notice, Defendants do not waive any defenses which may be available to them.

WHEREFORE, Defendants remove the above-captioned action now pending against it in the Superior Court of New Jersey, Law Division, Somerset County, to the United States District

Court for the District of New Jersey, wherein it shall proceed as an action originally commenced therein.

Respectfully submitted,

CONSTANGY, BROOKS & SMITH, LLP

By:   _____/s/ John E. MacDonald_____
John E. MacDonald (I.D. 011511995)
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
Telephone:  (609) 357-1183
Facsimile:  (609) 357-1196
jmacdonald@constangy.com
*Attorneys for Defendants*

Dated:  October 18, 2012

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 18, 2012, a copy of the foregoing was filed electronically and served by mail Michael R. O'Donnell, Esq., 66 Finderne Avenue, Bridgewater, New Jersey 08807, attorney for Plaintiffs.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

I also caused a copy of the foregoing document to be served via overnight mail to the Clerk, Superior Court of New Jersey, Law Division - Somerset County, 20 North Bridge Street, Somerville, NJ 08876-1262.

*/s/ John E. MacDonald*
JOHN E. MACDONALD

Dated:  October 18, 2012

2060668.1

PATRICK M. O'DONNELL, *ET AL*.
v.
NIGHTLIFE, DBA DUSK, *ET ALS*.


# EXHIBIT A

**MICHAEL R. O'DONNELL, ESQ.**
66 Finderne Avenue
Bridgewater, New Jersey 08807
(908) 725-9990
Attorney for Plaintiff(s)

| | |
|---|---|
| PATRICK M. O'DONNELL, BRIAN FIDANZATO,<br><br>                    Plaintiff(s),<br><br>        Vs.<br>Nightlife, DBA Dusk, Red Stripe Planes Group, James Wankmiller, Gary Velorie, Eric Millstein, Kevin Friel, Craig Slotkin, Justin Lotter, Kevin Scanlon, Chelsea Fleming, Brooke Ashcroft, Ashley Costello, Amanda Grill, Kelly Schweir, Sarrah Louise Dilenno, Ashley Knight, Liana Williams and   John Does 1-10 (a fictitious name for persons, firms or corporations presently unknown),<br><br>                    Defendant(s). | SUPERIOR COURT OF NEW JERSEY LAW DIVISION<br>SOMERSET COUNTY<br>DOCKET NO. *L-398-12*<br>Civil Action<br><br>COMPLAINT, JURY DEMAND, DESIGNATION OF TRIAL COUNSEL, DEMAND FOR INSURANCE INFORMATION & NOTICE TO PRODUCE |

Plaintiffs are former and current employees known as "tipped Euros" of an Atlantic City New Jersey night club, "Dusk" owned and operated by AC Nightlife LLC/DBA Dusk whose business office is located at 9204 Amhurst Avenue, Margate, NJ  08402.

Defendants are the entity, owners, principals, officers, managers, supervisors and co-employees known as, "bottle Servers" of Dusk who are responsible in whole or in part, individually and vicariously, for damages sustained by the plaintiffs

## COUNT ONE

1.  On or about June 2009 an agreement was entered into between Dusk and their tipped employees wherein it was agreed that plaintiff's in their capacity as "Tipped Euros", would receive 25 percent of the nightly tip pool which was to be comprised of 20 percent gratuity added to all bottle sales plus private side tips received by bottle servers.

2.  Commencing in or about August of 2009 the defendants knowingly, willfully and intentionally breached said agreement

Wherefore plaintiffs demand judgment against the defendants jointly and severally for compensatory damages, liquidated damages, interest; counsel fees, costs of suit and for such other relief as the Court deems equitable and just

## COUNT TWO

1. Plaintiffs repeat the allegations of Count One and make them a part herein

2. Defendants have forced plaintiffs through intimidation and threat of discipline, including termination, to perform duties not associated with tipped Euro duties on a nightly basis and have failed to pay plaintiff's full minimum wage for said duties

Wherefore plaintiffs demand judgment against the defendant's for money damages, liquidated damages; punitive damages, interest, counsel fees, costs, and for such other relief as the court deems equitable and just

## COUNT THREE

1. Plaintiffs repeat the allegations of Counts One and Two and make them a part herein

2. Management employees have illegally received monies from the tip pool to the detriment of plaintiffs and contrary to law; thereby invalidating the tip pool

3. Non-tipped employees have regularly received a percentage of the nightly tip pool to the detriment of plaintiffs and contrary to law pertaining to tip pools

Wherefore plaintiffs demand judgment against defendants jointly and severally for money damages, interest, liquidated damages, punitive damages, counsel fees, costs and such other relief as the court deems equitable and just

## COUNT FOUR

1. Plaintiffs repeat the allegations of Counts One, Two and Three and make them a part herein

2. On or about October 31, 2011 defendant Craig Slotkin did commit the tort of assault against plaintiff Patrick O'Donnell by intentionally pushing him in the back

3. Said act of assault was part of an overall plan on the part of defendants to create a hostile work environment towards plaintiff

03/28/2012  13:12    9087259993              O'DONNELL LAW                    PAGE  88

Wherefore Plaintiff Patrick O'Donnell demands Judgment against defendant jointly and severally for compensatory damages, punitive damages, counsel fees, costs and for such other relief as the court deems equitable and just

### COUNT FIVE

1. Plaintiffs repeat the allegations of Counts One through Four and make them a part herein

2. Non-co-employee defendants have routinely shaved or caused others to shave hours from the time records of plaintiffs, contrary to law and to the detriment of plaintiffs.

Wherefore plaintiffs demand judgment against defendants jointly and severally for compensatory damages, punitive damages, liquidated damages, counsel fees, costs, and such other relief as the court deems equitable and just

### COUNT SIX

1. Plaintiffs repeat the allegations of Counts One through Five and make them a part herein

2. On December 16, 2011 Patrick O'Donnell was wrongfully terminated from his employment with Dusk

3. The termination was the direct result of and in retaliation for plaintiff's complaints and threats of complaints to management and others, including public entities, pertaining to defendant's unethical, illegal, tortious and unfair business practices in intentionally failing to pay benefits under the Union agreement, including but not limited to failure to make payments to the union's severance fund, violating N.J.S.A 2C:40A-2 and intentionally failing to pay wages.

4. Plaintiff's termination was a result of and in retaliation for plaintiff's legal and protected union activities

5. Plaintiff's termination violated the provisions of CEPA, N.J.S.A. 34:19-1, *et seq*

6. Plaintiff's termination violated the Pierce Doctrine

7. Plaintiff's termination violated plaintiff's civil rights

Wherefore plaintiff demands judgment against defendants jointly and severally for compensatory damages, punitive damages, counsel fees, costs and such other relief as the Court deems equitable and just.

## DESIGNATION OF TRIAL COUNSEL

TO: Assignment Judge

In accordance with Rule 4:25-4 you are hereby notified that Michael R. O'Donnell is assigned to try this case.

## JURY DEMAND

The plaintiff hereby demands a trial by jury as to all issues herein.

## CERTIFICATION

I hereby certify that there is no prior litigation pending with regard to this case and that all concerned parties have been named in this pleading.

_____

MICHAEL R. O'DONNELL, ESQ.

DATED: March 22, 2012

## DEMAND FOR INSURANCE INFORMATION

Plaintiff(s) hereby demand, pursuant to R. 4:10-2(b), disclosure to the undersigned whether there are any insurance agreements or policies which may be liable to satisfy in part or all of a judgment which may be entered in this action against the defendant(s), or to indemnify or reimburse for payments made to satisfy the judgment and provide, under oath or certification: (a) number of the said policy; (b) name and address of insurer or issuer; (c) inception and expiration dates; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; (g) medical payment limits; (h) uninsured/underinsured policy limits; (i) name and address of person who has custody and possession thereof; (j) where and when each policy or agreement can be inspected.

MICHAEL R. O'DONNELL, ESQ.
Attorney for Plaintiff(s)

DATED:  March 22, 2012

03/28/2012  13:12    9087259993              O'DONNELL LAW                    PAGE  11

**Appendix XII-B1**

| | |
|---|---|
| **CIVIL CASE INFORMATION STATEMENT (CIS)** Use for Initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1 Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed. | PAYMENT TYPE: ☐CK ☐CG ☐CA |
| | CHECK NO. |
| | AMOUNT: |
| | OVERPAYMENT: |
| | BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Michael R. O'Donnell, Esq. | (908) 726-8990 | Somerset |

| FIRM NAME (if applicable) | DOCKET NUMBER (When available) |
|---|---|
| Law Office of Michael R. O'Donnell, LLC | |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 88 Finderne Avenue Bridgewater, NJ  08807 | Complaint |
| | JURY DEMAND   ☒ YES   ☐ NO |

| NAME OF PARTY (e.g. John Doe, Plaintiff) | CAPTION |
|---|---|
| PATRICK M. O'DONNELL, BRIAN FIDANZATO, Plaintiff (s) | O'Donnell, Fidanzato v Dusk et. al. and John Doe 1-10 |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ☒ NO |
|---|---|
| 616 | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? ☐ YES  ☒ NO | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?  ☒ YES  ☐ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN ☐ NONE ☒ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?  ☒ YES  ☐ NO | IF YES, IS THAT RELATIONSHIP? | ☒ EMPLOYER-EMPLOYEE ☐ FAMILIAL | ☐ FRIEND/NEIGHBOR ☐ BUSINESS | ☐ OTHER (explain) Employee - Employee |
|---|---|---|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☒ YES  ☐ NO |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?  ☐ YES  ☒ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION wheelchair |
|---|---|

| WILL AN INTERPRETER BE NEEDED?  ☐ YES  ☒ NO | IF YES, FOR WHAT LANGUAGE? |
|---|---|

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

ATTORNEY SIGNATURE:

Revised Effective 9/2009, CN 10517

03/29/2012  13:12    9087259993          O'DONNELL  LAW                    PAGE  12

---

**SIDE 2**

## CIVIL CASE INFORMATION STATEMENT (CIS)

Use for Initial pleadings (not motions) under Rule 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**
- 151  NAME CHANGE
- 175  FORFEITURE
- 302  TENANCY
- 399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502  BOOK ACCOUNT (debt collection matters only)
- 505  OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
- 506  PIP COVERAGE
- 510  UM or UIM CLAIM
- 511  ACTION ON NEGOTIABLE INSTRUMENT
- 512  LEMON LAW
- 801  SUMMARY ACTION
- 802  OPEN PUBLIC RECORDS ACT (SUMMARY ACTION)
- 999  OTHER (Briefly describe nature of action)

**Track II — 300 days' discovery**
- 305  CONSTRUCTION
- 509  EMPLOYMENT (other than CEPA or LAD)
- 599  CONTRACT/COMMERCIAL TRANSACTION
- 603  AUTO NEGLIGENCE – PERSONAL INJURY
- 605  PERSONAL INJURY
- 610  AUTO NEGLIGENCE – PROPERTY DAMAGE
- 699  TORT – OTHER

**Track III — 450 days' discovery**
- 005  CIVIL RIGHTS
- 301  CONDEMNATION
- 602  ASSAULT AND BATTERY
- 604  MEDICAL MALPRACTICE
- 606  PRODUCT LIABILITY
- 607  PROFESSIONAL MALPRACTICE
- 608  TOXIC TORT
- 609  DEFAMATION
- 616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617  INVERSE CONDEMNATION
- 618  LAW AGAINST DISCRIMINATION (LAD) CASES
- 620  FALSE CLAIMS ACT

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**
- 156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303  MT. LAUREL
- 508  COMPLEX COMMERCIAL
- 513  COMPLEX CONSTRUCTION
- 514  INSURANCE FRAUD
- 701  ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
- 280  Zelnorm
- 285  Stryker Trident Hip Implants

**Mass Tort (Track IV)**

| | | | |
|---|---|---|---|
| 248 | CIBA GEIGY | 279 | GADOLINIUM |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 271 | ACCUTANE | 282 | FOSAMAX |
| 272 | BEXTRA/CELEBREX | 283 | DIGITEK |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 284 | NUVARING |
| 275 | ORTHO EVRA | 286 | LEVAQUIN |
| 277 | MAHWAH TOXIC DUMP SITE | 601 | ASBESTOS |
| 278 | ZOMETA/AREDIA | 619 | VIOXX |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, In the space under "Case Characteristics."
Please check off each applicable category:

☐ Verbal Threshold          ☐ Putative Class Action          ☐ Title 59

Revised Effective 9/2009, CN 10517

CONSTANGY, BROOKS & SMITH, LLP
John E. MacDonald
100 Overlook Center, 2nd Floor
Princeton, New Jersey 08540
jmacdonald@constangy.com
Telephone: (609) 357-1183
Facsimile: (609) 357-1196

Attorneys for Defendants

| | |
|---|---|
| PATRICK M. O'DONNELL, BRIAN FIDANZATO, <br><br>             Plaintiffs, <br><br> *vs.* <br><br> Nightlife, DBA Dusk, Red Stripe Planes Group, James Wankmiller, Gary Veloric, Eric Millstein, Kevin Friel, Craig Slotkin, Justin Lotter, Kevin Scanlon, Chelsea Fleming, Brooke Ashcroft, Ashley Costello, Amanda Grill, Kelly Schweir, Sarrah Louise Dilenno, Ashley Knight, Liana Williams and John Does 1-10 (a fictitious name for persons, firms or corporations presently unknown), <br><br>             Defendant(s). | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY DOCKET NO. L-398-12 <br><br> CIVIL ACTION <br><br> NOTICE OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT |

TO:    Michael R. O'Donnell, Esq.
        66 Finderne Avenue
        Bridgewater, new Jersey 08807

        Attorney for Plaintiffs

      **PLEASE TAKE NOTICE** that on Friday, June 29, 2012 at 9:00 o'clock in the forenoon or as soon thereafter as counsel may be heard, Constangy, Brooks & Smith, LLP, attorneys for Defendants, will move before this Court at the Somerset County Courthouse at 20 North Bridge Street, Somerville, New Jersey 08876-1262, for an Order dismissing plaintiffs' Complaint in its entirety.

This motion is made pursuant to R. 4:6-2(e) for failure to state a claim upon which relief can be granted.

IN SUPPORT of the within motion, Defendants will rely upon their Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim and the Certification of John E. MacDonald.

A proposed form of Order is annexed hereto pursuant to R.1:6-2(a).

Oral argument is requested only if motion is opposed.

Calendar Call/Trial Date:  [none yet assigned]

CONSTANGY, BROOKS & SMITH, LLP
Attorneys for Defendants

By:_____
JOHN E. MACDONALD
A Member of the Firm

DATED:  June 12, 2012

## CERTIFICATION OF SERVICE

I hereby certify that on this 12th day of June 2012, I served the foregoing document upon plaintiffs' counsel of record by having a copy of same delivered via overnight mail, properly addressed as follows:

Michael R. O'Donnell, Esq.
66 Finderne Avenue
Bridgewater, New Jersey 08807

Attorney for Plaintiffs

JOHN E. MACDONALD

PATRICK M. O'DONNELL, BRIAN
FIDANZATO,

                              Plaintiffs,

*vs.*

Nightlife, DBA Dusk, Red Stripe Planes Group,
James Wankmiller, Gary Veloric, Eric
Millstein, Kevin Friel, Craig Slotkin, Justin
Lotter, Kevin Scanlon, Chelsea Fleming,
Brooke Ashcroft, Ashley Costello, Amanda
Grill, Kelly Schweir, Sarrah Louise Dilenno,
Ashley Knight, Liana Williams and John Does
1-10 (a fictitious name for persons, firms or
corporations presently unknown),

                              Defendant(s).

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: SOMERSET COUNTY
DOCKET NO. L-398-12

CIVIL ACTION

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM**

---

OF COUNSEL:
John E. MacDonald

ON THE BRIEF:
John E. MacDonald
Phillip J. Lipari

<u>PRELIMINARY STATEMENT</u>

On March 22, 2012, plaintiffs filed a six-count Complaint against Defendant Red Stripe Plane Group (improperly pled as "Red Stripe Planes Group") and 16 other named defendants and (hereinafter collectively "Red Stripe" or the "Company"), advancing unspecified causes of action, each against unidentified collections of the named defendants. Plaintiffs' Complaint is woefully vague and, in many instances, unintelligible. Accordingly, Red Stripe now moves to dismiss plaintiffs' Complaint pursuant to R. 4:6-2(e) for "failure to state a claim upon which relief can be granted."

More specifically, it is impossible to determine which legal theories plaintiffs purport to advance, let alone the facts which plaintiffs allege undergird their claims. Likewise, references to the statutory authority under which plaintiffs pursue their claims are conspicuously absent from plaintiffs' Complaint.

Counts One through Five of the Complaint are each untitled and predicated only upon one to three laconic sentences. Further, plaintiffs cloak each Count's legal theory behind a desultory miscellany of legal jargon. Within the same Count, plaintiffs often combine phrases related to differing legal theories such as: "assault," "breach [of] agreement," "law pertaining to tip pools," "wrongful termination," "fail[ure] to pay plaintiff's full minimum wage," "intimidation and threat[s]," "illegal recei[pt] of monies," "hostile work environment," and "shaved hours." Plaintiffs never identify, with even the slightest degree of certainty, each Count's actual attendant claim and/or statutory authority.

Further, every Count in plaintiffs' Complaint fails to sufficiently plead the facts under which Defendants can evaluate and plan their defense. See <u>Nostrame v. Santiago</u>, 420 N.J.Super. 427, 433 (App. Div. 2011) ("plaintiff must allege facts to support his or her claim

rather than merely reciting the elements of a cause of action."). In Count Six, for example, plaintiffs do not identify a single fact which purportedly supports their "CEPA, N.J.S.A." allegations; they merely - and improperly – state the basic elements of a CEPA claim and summarily conclude "Plaintiff's termination violated plaintiff's civil rights."[1]

The Company cannot respond to the instant Complaint without risking substantial prejudice. By way of example, Red Stripe cannot reasonably be expected to determine: (i) whether or not plaintiffs pursue their claims under federal or state law; (ii) how to properly answer plaintiffs' nebulous allegations; (iii) which affirmative defenses might be appropriate; (iv) whether any jurisdictional issues might exist; (v) which claims refer to which named defendants; and (vi) whether plaintiffs properly pled the elements of their claims (whatever these claims might be). Thus, pursuant to settled law, plaintiffs' Complaint should be dismissed.

## STATEMENT OF FACTS[2]

1.      On March 22, 2012, plaintiffs filed their Complaint in this Court. (See Exhibit ("Exh.") A to Mac. Cert.)

2.      Thereafter, Red Stripe received notice of the Complaint when plaintiffs served the Summons and Complaint upon the Company.

3.      Counts One to Five of plaintiffs' Complaint fail to advance any identifiable legal theories:

- Count One of plaintiffs' Complaint is comprised of only two, vague sentences regarding an alleged "breach," which occurred at an unspecified time, of an unidentified "agreement" respecting a supposed

---

[1]      Count Six is the only Count in plaintiffs' Complaint which identifies a statute or law: "CEPA, N.J.S.A. 34:19-1 et seq." Nonetheless, as discussed throughout this brief, Count Six is also improperly pled and warrants dismissal along with the balance of plaintiffs' Complaint.

[2]      In support of its motion, Defendant relies upon this Brief and the supporting Exhibits attached to the Certification of John E. MacDonald ("Mac. Cert.") filed concurrently herewith.

"nightly tip pool." Plaintiffs do not specify under which legal theory or statute they pursue Count One. (See Exh. A to Mac. Cert., pp.1-2)

- Count Two of plaintiffs' Complaint is likewise comprised of only two, ambiguous sentences. In Count Two, plaintiffs advance a wide range of claims, from being, "threatened" and "intimidated" to being "forced ... to perform duties not associated with [their positions]" to not being paid "full minimum wage[.]" Again, plaintiffs do not specify under which legal theory or statute they advance this miscellany of allegations. (See Exh. A to Mac. Cert., p.2)

- Count Three of plaintiffs' Complaint contains only three terse sentences. Like Counts One and Two, plaintiffs do not specify the legal theory under which they make their claims. Nor do they cite any statute pursuant to which they bring their suit. (See Exh. A to Mac. Cert., p.2)

- Count Four also contains three, short sentences. Plaintiffs claim that they were victims of "the tort of assault" and, simultaneously (and improperly) in the same Count, advance a "hostile work environment" theory. If plaintiffs intend to pursue this "hostile work environment" claim, they do not specify under which statute or the protected class to which they allegedly belong. (See Exh. A to Mac. Cert., pp.2-3)

- Count Five, likewise, is unintelligible; it is comprised of only two brief allegations, this time claiming that "defendants have routinely shaved ... hours...contrary to law[.]" Not surprisingly, again, plaintiffs do not identify the law/statute which Defendants supposedly violated. (See Exh. A to Mac. Cert., p.3)

4.     Though Count Six of plaintiffs' Complaint references "CEPA, N.J.S.A. 34:19-1," it is likewise deficient. Count Six does not contain any factual allegations (other than the supposed date of plaintiff's termination). Plaintiffs merely recite the elements of a CEPA claim without alleging factual support. (See Exhibit A to Mac. Cert., pp.3-4)

5.     Red Stripe now moves to dismiss the Complaint pursuant to R. 4:6-2(e) for "failure to state a claim upon which relief can be granted" as settled law mandates dismissal of a complaint where the facts and allegations are so unintelligible (or entirely absent) that a defendants cannot reasonably be required to frame a responsive pleading.

ARGUMENT

POINT I

PLAINTIFFS' ALLEGATIONS ARE SO VAGUE AND CONCLUSORY THAT THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY UNDER R. 4:6-2(e)

It is axiomatic that "Complaints cannot survive a motion to dismiss where the claims are conclusory or vague and unsupported by particular overt acts." Partovi v. Felician College, 2011 WL 867275 (App. Div. March 15, 2011) (citing, Delbridge v. Office of Pub. Defender, 238 N.J. Super. 288, 314 (Law Div. 1989)). As the Delbridge Court succinctly states:

> [D]efendants are not obliged to defend against a barrage of words, which have apparent legal meaning but which are untied to any acts of the respective defendants or to any claims for relief ... A shotgun approach to pleading is not enough.

Delbridge, 238 N.J. Super. at 316; accord, Glass v. Suburban Restoration Co., 317 N.J.Super. 574, 582 (App.Div.1998) ("[P]leadings reciting mere conclusions without facts and reliance on subsequent discovery do not justify a lawsuit").

The Motion Judge's decision, which the Appellate Division quoted in Powell v. Hunterdon Care Center, is instructive. 2009 WL 1789450, *1 (App. Div. 2009). There, as here, plaintiff "filed a complaint against defendant and several of its named and unnamed managers and agents alleging wrongful termination [and other allegations]." Id. "[D]efendant moved to dismiss under Rule 4:6-2(e)[.]" Id. Dismissing the Complaint, the Motion Judge reasoned:

> The complaint was simply too confusing for the Court to ... analyze it on a motion to dismiss ... The plaintiff's [reasoning] that the plaintiff left the complaint vague so as to preserve all possible causes of action, the Court finds is inappropriate[.]

Id. at *1-2. The Court proceeded:

> [T]he Court finds that plaintiff at a minimum has to plead a complaint that is sufficiently comprehensible and specific to allow

the defendant an opportunity to file a motion for failure to state a claim. And the Court finds that the claim-complaint is not now in that shape.

Id. at *1-2 (plaintiff later filed an Amended Complaint, which was dismissed on other grounds).

Presumably like in Powell, plaintiffs here "le[ave] the Complaint ... vague" to "preserve all possible causes of action" by cloaking their claims in an unintelligible pleading. Powell, 2009 WL 1789450 at *1. Indeed, it is indisputable that plaintiffs do not identify with any certainty the legal claims in Counts One through Five of their Complaint. (See Exh. A to Mac. Cert.; Statement of Facts ("SOF"), ¶ 3) Each of these Counts is comprised of one to three short sentences - never referencing a statute - and confusingly using language from differing legal theories. (See Exh. A to Mac. Cert.; SOF, ¶ 3).

Case law is legion that such gamesmanship is improper and such ill-defined allegations must be dismissed. See Delbridge, 238 N.J. Super. 288; Glass, 317 N.J.Super. 574; Partovi, 2011 WL 867275. "[A]t a minimum[,] [a plaintiff] has to plead a complaint that is sufficiently comprehensible and specific to allow the defendant an opportunity to file a motion for failure to state a claim." Powell, 2009 WL 1789450 at *1-2. Presently, among other things, Defendants cannot determine whether it faces federal or state claims. Nor can it determine under which theories/statutes it may proffer its affirmative defenses. Nor can it effectively consider a separate motion for failure to state a claim based upon failure to allege the proper elements of these presently disguised claims. For all of the foregoing reasons, the Complaint should be dismissed.

POINT II

**PLAINTIFFS' COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS TO SATISFY THE PLEADING STANDARDS IN NEW JERSEY AND, THUS, SHOULD BE DISMISSED IN ITS ENTIRETY UNDER R. 4:6-2(e)**

Dismissal of the Complaint, in its entirety, is appropriate for another independent reason: plaintiffs' allegations do not remotely meet the pleading standard in New Jersey.  In New Jersey, New Jersey, "plaintiff must allege facts to support his or her claim rather than merely reciting the elements of a cause of action." Nostrame, 420 N.J.Super. at 433 (citing, Printing Mart–Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 768 (1989); Glass v. Suburban Restoration Co., 317 N.J.Super. 574, 582 (App.Div.1998); Kotok Bldg. v. Charvine Co., 183 N.J.Super. 101, 104–05 (Law Div. 1981)).

Thus, plaintiffs cannot simply describe the elements of a legal claim, without specifying facts underlying their allegations, and hope "any essential facts that the court may find lacking can be dredged up in discovery." Printing Mart, 116 N.J. at 768; accord, Camden County Energy Recovery Associates, L.P. v. New Jersey Dep't Environmental Protection, 320 N.J. Super. 59, 64 (App. Div. 1999) ("Discovery is intended to lead to facts supporting or opposing an asserted legal theory; it is not designed to lead to formulation of a legal theory").

Here, plaintiffs' Complaint offers few (if any) specifics regarding the facts of each Count (indeed, the Complaint begins with the two-sentence "Count One," skipping any discussion of underlying factual allegations common to all claims).  For example, in Count Six, plaintiffs merely allege the basic elements of a CEPA claim, but do not offer any supporting facts.  (See Exh. A. to Mac. Cert.)  Plaintiffs do not identify the defendants to which the Count refers, the purported "whistleblowing event," the law underlying the supposed "complaints" or any other factual detail upon which plaintiffs might predicate this claim.  (See Exh. A to Mac. Cert.)

Simply put, plaintiffs' Complaint is the quintessential example of a "mere[] recit[ation] [of] the elements of a cause of action" blindly hoping to "dredge[] up in discovery" facts that might give rise to some - presently unknown - claim.  Printing Mart, 116 N.J. at 768.  The Complaint does not afford Defendants an opportunity to determine which facts are at issue and how it might defend this case.  Even under a liberal pleading standard, this is insufficient.  See Nostrame, 420 N.J.Super. 427 (App. Div. 2011).  Accordingly, for the foregoing reasons, plaintiffs' Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Red Stripe's Motion to Dismiss should be granted and this Court should dismiss plaintiffs' Complaint in its entirety.

CONSTANGY, BROOKS & SMITH, LLP
Attorneys for Defendants

By:_____
JOHN E. MACDONALD
A Member of the Firm

100 Overlook Center, 2nd Floor
Princeton, New Jersey 08540
jmacdonald@constangy.com
Telephone: (609) 357-1183
Facsimile: (609) 357-1196

1902025.1

## CERTIFICATION OF SERVICE

I hereby certify that on this 12th day of June 2012, I served the foregoing document upon plaintiffs' counsel of record by having a copy of same delivered via overnight mail, properly addressed as follows:

Michael R. O'Donnell, Esq.
66 Finderne Avenue
Bridgewater, New Jersey 08807

Attorney for Plaintiffs

JOHN E. MACDONALD

CONSTANGY, BROOKS & SMITH, LLP
John E. MacDonald
100 Overlook Center, 2nd Floor
Princeton, New Jersey 08540
jmacdonald@constangy.com
Telephone: (609) 357-1183
Facsimile: (609) 357-1196

Attorneys for Defendants

---

PATRICK M. O'DONNELL, BRIAN
FIDANZATO,

                    Plaintiffs,

vs.

Nightlife, DBA Dusk, Red Stripe Planes Group,
James Wankmiller, Gary Veloric, Eric
Millstein, Kevin Friel, Craig Slotkin, Justin
Lotter, Kevin Scanlon, Chelsea Fleming,
Brooke Ashcroft, Ashley Costello, Amanda
Grill, Kelly Schweir, Sarrah Louise Dilenno,
Ashley Knight, Liana Williams and John Does
1-10 (a fictitious name for persons, firms or
corporations presently unknown),

                    Defendant(s).

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: SOMERSET COUNTY
DOCKET NO. L-398-12

CIVIL ACTION

CERTIFICATION OF
JOHN E. MACDONALD

---

John E. MacDonald, of full age, hereby certifies as follows:

      1.    I am an attorney at law, and a member of the firm of Constangy, Brooks & Smith, LLP, attorneys for Defendants. I submit this Certification in support of Defendants' Motion to Dismiss the Complaint Plaintiffs' Complaint.

      2.    Annexed hereto as Exhibit A is a copy of plaintiffs' Complaint.

      3.    Annexed hereto as Exhibit B is a copy Partovi v. Felician College, 2011 WL 867275 (App. Div. March 15, 2011).

4.      Annexed hereto as Exhibit C is a copy of <u>Powell v. Hunterdon Care Center</u>,
2009 WL 1789450 (App. Div. June 25, 2009).


I certify that the foregoing statements made by me are true. I acknowledge that if any of the
above statements made by me are willfully false that I am subject to punishment.

By: _____
        JOHN E. MACDONALD

DATED: June 12, 2012

06/19/2012  15:08   9087259993                    O'DONNELL LAW                              PAGE  02



FILED

JUN 19 2012

CIVIL DIVISION
SOMERSET COUNTY

**MICHAEL R. O'DONNELL, ESQ.**
66 Finderne Avenue
Bridgewater, New Jersey 08807
(908) 725-9990
Attorney for Plaintiff(s)

| | |
|---|---|
| PATRICK M. O'DONNELL, BRIAN FIDANZATO,<br><br>Plaintiff(s),<br><br>Vs.<br><br>A.C. Nightlife, DBA Dusk, Red Stripe Planes Group, James Wankmiller, Gary Veloric, Eric Millstein, Kevin Friel, Craig Slotkin, Justin Lotter, Kevin Scanlon, Chelsea Fleming, Brooke Ashcroft, Ashley Costello, Amanda Grill, Kelly Schweir, Sarrah Louise Dilenno, Ashley Knight, Liana Williams and  John Does 1-10 (a fictitious name for persons, firms or corporations presently unknown),<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>SOMERSET COUNTY<br>DOCKET NO. L-SOM-398-12<br>Civil Action<br><br>AMENDED COMPLAINT, JURY DEMAND,  DESIGNATION OF TRIAL COUNSEL, DEMAND FOR INSURANCE INFORMATION & NOTICE TO PRODUCE |

Plaintiffs are residents of Somerset County New Jersey and are former employees known as "tipped Euros" of the Atlantic City New Jersey night club, "Dusk" owned and operated by A.C Nightlife LLC/DBA Dusk whose business office is located at 9204 Amhurst Avenue, Margate, NJ, 08402.

Defendants A.C. Nightlife DBA/Dusk, Red Stripes Planes Group, Jim Wankmiller, Gary Veloric, Eric Millstein, Kevin Friel, Craig Slotkin, Kevin Scanlon, and Justin Lotter are the entity, owners, principals, officers, managers, supervisors of Dusk and the remaining defendants are co-employees known as, "bottle Servers" of Dusk, all of whom are responsible in whole or in part, individually and vicariously, for damages sustained by the plaintiffs

### COUNT ONE WILFUL BREACH OF CONTRACT AND FRAUD

1.  In April of 2009 Plaintiff, Patrick O'Donnell, a dual rated tipped Euro/Buser in nightlife at the Borgota Hotel Casino in Atlantic City, NJ, participated in interviews for a full-time tipped euro position at Dusk with members of the Dusk management team, Eric Millstein, Craig Slotkin and Kevin Friel.

2. Said defendants had previously been managers in nightlife at the Borgata and know plaintiff and considered him to be a model employee.

3. During the interviews, plaintiff inquired as to compensation for the tipped Euro position and he was told that there would be a tip pool which would be modeled after and implemented the way the Tip Pool was structured and implemented at the Borgata, specifically that the tipped euros would receive a nightly percentage of the tip pool to be comprised of 20 percent gratuity of all bottle sales plus 25 percent of the side tips received nightly by the bottle servers.

4. Plaintiff also inquired during the interviews as to the job responsibilities of a tipped Euro and he was told that the responsibilities would be the same as those of a tipped euro at the Borgata.

5. On or about June 2009, representing a time prior to the official opening of the club, an agreement was entered into between Dusk Management and their tipped employees wherein it was agreed that "Tipped Euros", would receive 25 percent of the nightly tip pool which was to be comprised of 20 percent gratuity added to all bottle sales plus 25 percent of the nightly private side tips received by bottle servers and that the sum of said amounts would be split equally between all tipped euros who worked on the given night.

6. At the time the agreement was reached, Eric Millstein specifically told the bottle servers that having voluntarily entered into the agreement they would be required to abide by it and if for any reason they did not, he would take away from the offender their respective share of the twenty percent gratuity added to every bottle sale.

7. Commencing on or about August of 2009 the defendants breached said agreement by intentionally failing to give plaintiffs nightly their proper percentage of the nightly tip pools.

8. In failing to pay plaintiff's twenty-five percent of the nightly tip pool, the bottle server defendants and managers of Dusk willfully concealed and refused to show plaintiffs nightly records kept by them wherein the nightly tip pool amounts as well as side tips were kept.

9. Reasonable requests made by plaintiffs and other tipped euros for transparency regarding the tip pool, including but not limited to the request that the nightly tips be counted out in the open with the tipped euros present, in the same fashion as is done at the Borgata and other Atlantic City clubs, were continuously denied by defendant bottle servers and management because defendants knew that plaintiffs were not receiving the proper amounts of the tip pool.

10. Dusk mangers knew based upon complaints by plaintiffs and other tipped euros that the bottle servers were not honoring the agreement and intentionally lied to plaintiffs when asked to intercede on their behalf by stating that they were not permitted to get involved in the tip pool, notwithstanding the mandate by Eric Millstein as well as clear and unambiguous language contained in Red Stripes employment manual to the contrary.

11. Management defendants also went out of their way to prevent plaintiffs from being present when tips were counted by making them perform cleaning duties in areas of the club where the tips were not being counted.

12. Bottle server defendants gave nightly tip payouts to the tipped euros via cash contained in envelopes with an amount written on the envelope purporting to be the tipped euro proper share of the nightly tip pool.

13. The amounts written on the envelope did not accurately describe the amount the tipped Euros should have received from the tip pool and the amounts stated were intentionally wrong and were intended to defraud plaintiff's and trick them into believing that they had received the agreed to amounts.

14. Management's refusal to enforce the agreement was due to the fact that they were improperly partaking in and receiving monies from the nightly tip pools.

15. The defendants intentionally and willfully denied plaintiffs their proper share of the nightly tip pools and fraudulently conspired to do so for their own pecuniary gain.

16. Wherefore plaintiffs demand judgment against all defendants jointly and severally, vicariously and individually, for compensatory damages, liquidated damages, punitive damages, interest; counsel fees, costs of suit and for such other relief as the Court deems equitable and just.

## COUNT TWO WAGE AND HOUR

1. Plaintiffs repeat the allegations of Counts One and make them a part herein

2. Defendants forced plaintiffs through intimidation and threat of discipline, including termination, to perform duties not associated with tipped Euro duties including but not limited to such duties as moping, vacuuming and sweeping floors, polishing stainless steel, cleaning soda fountain machines, flipping tables and cleaning the underside of tables, re-arranging tables, cleaning the management office and other areas of the club not part of their nightly assigned area, scraping gum from the floors of the entire club, cleaning garbage cans and performing trash removal on a nightly basis.

3. The aforementioned duties were performed nightly by plaintiffs before during and after their scheduled shifts and amounted to an average of three or more hours per night.

4. The nightly performance of the non-tipped duties aforementioned rendered plaintiffs dual Tipped Euro/buser employees and plaintiffs were entitled to receive full minimum wage of $7.25 per hour for all such hours worked verses the lower minimum wage rates they received for tipped work.

5. Management defendants negligently, willfully and intentionally failed to pay plaintiffs the full minimum wage for the aforementioned duties they performed as busers in violation of applicable New Jersey wage laws.

Wherefore plaintiffs demand Judgment against the defendant's for money damages, liquidated damages, interest, counsel fees, costs, and for such other relief as the court deems equitable and just.

## COUNT THREE TIP POOL WAGE AND HOUR VIOLATIONS

1. Plaintiffs repeat the allegations of Counts One and Two and make them a part herein

2. Management employees have illegally received monies from the tip pool to the detriment of plaintiffs and contrary to New Jersey wage and Hour laws.

3. Non-tipped employees including busers, dishwashers and bar backs have regularly received monies from the nightly tip pool to the detriment of plaintiffs and contrary to New Jersey Wage and Hour laws.

Wherefore plaintiffs demand judgment against defendants jointly and severally for money damages, interest, liquidated damages, punitive damages, counsel fees, costs and such other relief as the court deems equitable and just

## COUNT FOUR ASSAULT AND RETALIATION

1. Plaintiffs repeat the allegations of Counts One, Two and Three and make them a part herein

2. On or about October 31, 2011 defendant Craig Slotkin did commit the tort of assault against plaintiff Patrick O'Donnell by intentionally pushing him in the back while the two of them were engaged in conversation in the back of the house.

3. Said act of assault was part of an overall plan on the part of management and ownership defendants to force Plaintiff to quit his job or to react in a way which could justify termination for cause and was intended to retaliate against plaintiff because of plaintiff's complaints to management about the tip pool violations and for grievances filed by plaintiff with union local 54 pertaining to violations of the collective bargaining agreement (CBA) on the part of Dusk

Wherefore Plaintiff Patrick O'Donnell demands Judgment against management and ownership defendants jointly and severally for compensatory damages, punitive damages, counsel fees, costs and for such other relief as the court deems equitable and just.

## COUNT FIVE THEFT OF HOURS

1. Plaintiffs repeat the allegations of Counts One through Four and make them a part herein

2. Management defendants have routinely shaved and caused others to shave hours from the time records of plaintiffs, contrary to civil and criminal New Jersey statutes and common law and to the detriment of plaintiffs.

3. The shaving of hours was intentional, willful and done for the pecuniary gain of Dusk management and ownership and with the knowledge of ownership defendants.

Wherefore plaintiffs demand judgment against defendants jointly and severally for compensatory damages, punitive damages, liquidated damages, counsel fees, costs, and such other relief as the court deems equitable and just

## COUNT SIX CEPA AS TO PATRICK ODONNELL

1. Plaintiffs repeat the allegations of Counts One through Five and make them a part herein
2. On December 16, 2011 Patrick O'Donnell was terminated from his employment with Dusk via an email sent to him by defendant Eric Millstein with a carbon copy to Defendant James Wankmiller.

3. The termination was the direct result of, in retaliation for and subsequent to: plaintiff's complaints to management and bottle server defendants as well as to Union local 54 about not receiving the proper amount of the nightly tip pools which plaintiff reasonably believed to have been the result of fraud; complaints to management defendants and local 54 pertaining to violations of the CBA in terms of being forced to perform cleaning duties specifically prohibited by the CBA; complaints to management and local 54 for violations of the CBA in terms of not establishing a tip committee as required under the CBA, complaints to management and local 54 about not receiving full minimum wages for non-tipped work which plaintiff reasonably believed to have been in violation of wage and hour laws; reporting to management and local 54 the assault against him by defendant Craig Slotkin of October 31, 2011 which plaintiff reasonably believed to be in violation of New Jersey's simple assault statute and for threatening to file a complaint against Craig slotkin for simple assault in Atlantic City Municipal court; Complaints to Dusk management and ownership and reporting to local 54 that Dusk had willfully and intentionally not paid any financial benefits to any of its union members since signing the CBA including vacations pay, holiday pay, earned attendance pay, personal day pay; and contractual overtime pay which plaintiff reasonably believed was the result of fraud and in violation of New Jersey criminal statutes pertaing to theft ; for threatening Dusk management defendants with complaints to the New Jersey

Department of labor for the wage and hour violations; for threatening to file
disorderly person complaints against Dusk management defendants for violations of
NJSA 40A-2 which makes it a disorderly persons offense to fail to pay wages or
benefits due under a CBA within 30 days from the date the are due; for threatening to
file and for filing a complaint with the U.S. Department of labor when it was
discovered that Dusk had not made any required contributions to the union's
severance fund on behalf of plaintiff or any other past or current union employee
which plaintiff reasonably believed was contrary to civil and criminal statutes
pertaining to ERISA; for advising other union employees that Dusk had intentionally
committed CBA and wage and hour violations and that Defendant Craig Slotkin had
pushed him on October 31, 2011.

4.  Prior to termination and subsequent to the aforementioned complaints, plaintiff
    was not assigned to work any private parties at Dusk as he had been on every
    occasion wherein there had been a private party at Dusk prior to the complaints.

5.  Private parties such as bar mitzvahs and other social events took place at the club
    during non-regular shift hours and were an opportunity for employees to earn
    additional pay.

6.  The non-scheduling of plaintiff for private parties was in retaliation for plaintiff
    making the aforementioned complaints and constituted a negative employment
    consequence to him.

7.  Plaintiff's not being scheduled for private parties due to the aforementioned
    complaints and his subsequent termination violated the provisions of CEPA,
    N.J.S.A. 34:19-1, et seq

Wherefore plaintiff demands judgment against management and ownership defendants
jointly and severally for compensatory damages, punitive damages, past and future wages
and benefits, emotional distress, counsel fees, costs and such other relief as the Court
deems equitable and just.

COUNT SEVEN CEPA VIOLATION AS TO BRIAN FIDANZADO

1.  Plaintiffs repeat the allegations of Counts One through Seven and make them a
    part herein

2.  On or about June of 2009 plaintiff Brian Fidanzado, a friend of Patrick O'Donnell
    since grade school, was referred to Dusk for possible employment by Patrick
    O'Donnell and was in fact hired as a bus person by Dusk.

3.  At a point in 2010, plaintiff was promoted by Dusk to tipped euro.

4.  After promotion, plaintiff complained to Dusk management and bottle server
    defendants about not receiving the proper amount of the nightly tip pools which
    plaintiff reasonably believed to have been the result of fraudulent conduct on the
    parts of defendants, being forced to perform cleaning duties prohibited under the
    CBA and not being paid the higher minimum wage rate for the non-tipped work
    which plaintiff reasonably believed to be in violation of applicable wage and hour
    laws.

5.  Subsequent to said complaints plaintiff was not assigned to work any private
    parties at Dusk as he had been on numerous occasions prior to the complaints.

6. Private parties such as bar mitzvahs and other social events took place at the club during non-regular shift hours and were an opportunity for employees to earn additional pay.

7. The non-scheduling of plaintiff for private parties was in retaliation for plaintiff making the aforementioned complaints and constituted a negative employment consequence to him.

8. On or about 2012, plaintiff was constructively terminated by Dusk when Dusk did away with the tip euro position and combined it with the buser classification which resulted in plaintiff's take home income being fifty percent less than what it had been prior to the change.

9. Doing away with the tip euro position was the direct result of, in retaliation for and subsequent to: plaintiff's complaints to Dusk management and bottle server defendants about not receiving the proper amount of the nightly tip pools which plaintiff reasonably believed to be the result of fraudulent conduct, being forced to perform cleaning duties prohibited under the CBA and not being paid the higher minimum wage rate for the non-tipped work which plaintiff reasonably believed to be in violation of applicable wage and hour laws;

10. Plaintiff's no longer being scheduled to work private parties and termination violated the provisions of CEPA, N.J.S.A. 34:19-1, *et seq*

Wherefore plaintiff demands judgment against management and ownership defendants jointly and severally for compensatory damages, emotional distress, punitive damages, past and future wages and benefits, counsel fees, costs and such other relief as the Court deems equitable and just.

## DESIGNATION OF TRIAL COUNSEL

TO: Assignment Judge

    In accordance with Rule 4:25-4 you are hereby notified that Michael R.

O'Donnell is assigned to try this case.

## JURY DEMAND

    The plaintiff hereby demands a trial by jury as to all issues herein.

## CERTIFICATION

    I hereby certify that there is no prior litigation pending with regard to this case

and that all concerned parties have been named in this pleading.

                          MICHAEL R. O'DONNELL, ESQ.

DATED: June 19, 2012

## DEMAND FOR INSURANCE INFORMATION

Plaintiff(s) hereby demand, pursuant to R. 4:10-2(b), disclosure to the undersigned whether there are any insurance agreements or policies which may be liable to satisfy in part or all of a judgment which may be entered in this action against the defendant(s), or to indemnify or reimburse for payments made to satisfy the judgment and provide, under oath or certification: (a) number of the said policy; (b) name and address of insurer or issuer; (c) inception and expiration dates; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; (g) medical payment limits; (h) uninsured/underinsured policy limits; (I) name and address of person who has custody and possession thereof; (j) where and when each policy or agreement can be inspected.

MICHAEL R. O'DONNELL, ESQ.
Attorney for Plaintiff(s)

DATED: June 19, 2012

**MICHAEL R. O'DONNELL, ESQ.**
66 Finderne Avenue
Bridgewater, New Jersey 08807
(908) 725-9990
Attorney for Plaintiff(s)



| | |
|---|---|
| PATRICK M. O'DONNELL, BRIAN FIDANZATO,<br><br>Plaintiff(s),<br><br>Vs.<br>A.C. Nightlife, DBA Dusk, Red Stripe Planes Group, James Wankmiller, Gary Veloric, Eric Millstein, Kevin Friel, Craig Slotkin, Justin Lotter, Kevin Scanlon, Chelsea Fleming, Brooke Ashcroft, Ashley Costello, Amanda Grill, Kelly Schweir, Sarrah Louise Dilenno, Ashley Knight, Liana Williams and John Does 1-10 (a fictitious name for persons, firms or corporations presently unknown),<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY LAW DIVISION SOMERSET COUNTY DOCKET NO. L-SOM-398-12 Civil Action<br><br>SECOND AMENDED COMPLAINT, JURY DEMAND, DESIGNATION OF TRIAL COUNSEL, DEMAND FOR INSURANCE INFORMATION |

Plaintiffs are residents of Somerset County New Jersey and are former employees known as "tipped Euros" of the Atlantic City New Jersey night club, "Dusk" owned and operated by AC Nightlife LLC/DBA Dusk whose business office is located at 9204 Amhurst Avenue, Margate, NJ, 08402.

Defendants A.C. Nightlife DBA/Dusk, Red Stripes Planes Group, Jim Wankmiller, Gary Veloric, Eric Millstein, Kevin Friel, Craig Slotkin, Kevin Scanlon, and Justin Lotter are the entity, owners, principals, officers, managers, supervisors of Dusk and the remaining defendants are co-employees known as, "bottle Servers" of Dusk, all of whom are responsible in whole or in part, individually and vicariously, for damages sustained by the plaintiffs

## COUNT ONE WILFUL BREACH OF CONTRACT

1. In April of 2009 Plaintiff, Patrick O'Donnell, a dual rated tipped Euro/Buser in nightlife at the Borgata Hotel Casino in Atlantic City, NJ, participated in interviews for a full-time tipped euro position at Dusk with members of the Dusk management team, Eric Millstein, Craig Slotkin and Kevin Friel.

2. Said defendants had previously been managers in nightlife at the Borgata and knew plaintiff and considered him to be a model employee.

3. During the interviews, plaintiff inquired as to compensation for the tipped Euro position and he was told that there would be a tip pool which would be modeled after and implemented the way the Tip Pool was structured and implemented at the Borgata, specifically that the tipped euros would receive a nightly percentage of the tip pool to be comprised of 20 percent gratuity of all bottle sales plus 25 percent of the side tips received nightly by the bottle servers.

4. Plaintiff also inquired during the interviews as to the job responsibilities of a tipped Euro and he was told that the responsibilities would be the same as those of a tipped euro at the Borgata.

5. On or about June 2009, representing a time prior to the official opening of the club, an agreement was entered into between Dusk Management and their tipped employees wherein it was agreed that "Tipped Euros", would receive 25 percent of the nightly tip pool which was to be comprised of 20 percent gratuity added to all bottle sales plus 25 percent of the nightly private side tips received by bottle servers and that the sum of said amounts would be split equally between all tipped euros who worked on the given night.

6. At the time the agreement was reached, Eric Millstein specifically told the bottle servers that having voluntarily entered into the agreement they would be required to abide by it and if for any reason they did not, he would take away from the offender their respective share of the twenty percent gratuity added to every bottle sale.

7. Commencing on or about August of 2009 the defendants breached said agreement by intentionally failing to give plaintiffs nightly their proper percentage of the nightly tip pools.

8. In failing to pay plaintiff's twenty-five percent of the nightly tip pool, the bottle server defendants and managers of Dusk willfully concealed and refused to show plaintiffs nightly records kept by them wherein the nightly tip pool amounts as well as side tips were kept.

9. Reasonable requests made by plaintiffs and other tipped euros for transparency regarding the tip pool, including but not limited to the request that the nightly tips be counted out in the open with the tipped euros present, in the same fashion as is done at the Borgata and other Atlantic City clubs, were continuously denied by defendant bottle servers and management because defendants knew that plaintiffs were not receiving the proper amounts of the tip pool.

10. Dusk mangers knew based upon complaints by plaintiffs and other tipped euros that the bottle servers were not honoring the agreement and intentionally lied to plaintiffs when asked to intercede on their behalf by stating that they were not permitted to get involved in the tip pool, notwithstanding the mandate by Eric Millstein as well as clear and unambiguous language contained in Red Stripes employment manual to the contrary.

11. Management defendants also went out of their way to prevent plaintiffs from being present when tips were counted by making them perform cleaning duties in areas of the club where the tips were not being counted.

12. Wherefore plaintiffs demand judgment against the defendant's for money damages, liquidated damages, punitive damages, interest, counsel fees, costs, and for such other relief as the court deems equitable and just.

## COUNT TWO FRAUD

1. Plaintiff repeats the allegations of Count One and Makes them a part herein
2. Bottle server defendants gave nightly tip payouts to the tipped euros via cash contained in envelopes with an amount written on the envelope purporting to be the tipped euro proper share of the nightly tip pool.
3. The amounts written on the envelope did not accurately describe the amount the tipped Euros should have received from the tip pool and the amounts stated were intentionally wrong and were intended to defraud plaintiff's and trick them into believing that they had received the agreed to amounts.
4. Management's refusal to enforce the agreement was due to the fact that they were improperly partaking in and receiving monies from the nightly tip pools.
5. The defendants intentionally and willfully denied plaintiffs their proper share of the nightly tip pools and fraudulently conspired to do so for their own pecuniary gain.
6. Wherefore plaintiffs demand judgment against all defendants jointly and severally, vicariously and individually, for compensatory damages, liquidated damages, punitive damages, interest; counsel fees, costs of suit and for such other relief as the Court deems equitable and just.

## COUNT THREE WAGE AND HOUR

1. Plaintiffs repeat the allegations of Counts One and Two and make them a part herein
2. Defendants forced plaintiffs through intimidation and threat of discipline, including termination, to perform duties not associated with tipped Euro duties including but not limited to such duties as moping, vacuuming and sweeping floors, polishing stainless steel, cleaning soda fountain machines, flipping tables and cleaning the underside of tables, re-arranging tables, cleaning the management office and other areas of the club not part of their nightly assigned area, scraping gum from the floors of the entire club, cleaning garbage cans and performing trash removal on a nightly basis.
3. The aforementioned duties were performed nightly by plaintiffs before during and after their scheduled shifts and amounted to an average of three or more hours per night.
4. The nightly performance of the non-tipped duties aforementioned rendered plaintiffs dual Tipped Euro/buser employees and plaintiffs were entitled to receive full minimum wage of $7.25 per hour for all such hours worked verses the lower minimum wage rates they received for tipped work.
5. Management defendants negligently, willfully and intentionally failed to pay plaintiffs the full minimum wage for the aforementioned duties they performed as busers in violation of applicable New Jersey wage laws.

Wherefore plaintiffs demand Judgment against the defendant's for money damages, liquidated damages, interest, counsel fees, costs, and for such other relief as the court deems equitable and just.

## COUNT FOUR TIP POOL WAGE AND HOUR VIOLATIONS

1. Plaintiffs repeat the allegations of Counts One, Two and Three and makes them a part herein
2. Management employees have illegally received monies from the tip pool to the detriment of plaintiffs and contrary to New Jersey wage and Hour laws.
3. Non-tipped employees including busers, dishwashers and bar backs have regularly received monies from the nightly tip pool to the detriment of plaintiffs and contrary to New Jersey Wage and Hour laws.

Wherefore plaintiffs demand judgment against defendants jointly and severally for money damages, interest, liquidated damages, punitive damages, counsel fees, costs and such other relief as the court deems equitable and just

## COUNT FIVE ASSAULT

1. Plaintiffs repeat the allegations of Counts One, Two, Three and Four and makes them a part herein
2. On or about October 31, 2011 defendant Craig Slotkin did commit the tort of assault against plaintiff Patrick O'Donnell by intentionally pushing him in the back while the two of them were engaged in conversation in the back of the house.
3. The act aforesaid was intended to cause and did cause plaintiff emotional distress
4. Defendant's AC nightlife as well as Management and ownership defendants are vicariously liable for the conduct of defendant Craig Slotkin

Wherefore Plaintiff Patrick O'Donnell demands Judgment against Craig Slotkin, AC Nightlife James Wankmiller, Eric Millstein and Gary Velorie for compensatory damages, punitive damages, counsel fees, costs, and such other relief as the court deems equitable and just.

## COUNT SIX SHAVING OF HOURS

1. Plaintiffs repeat the allegations of Counts One through Five and makes them a part herein
2. Management defendants have routinely shaved and/or caused to be shaved hours from the time records of plaintiffs resulting in the paychecks received by plaintiffs not properly reflecting the actual amount of hours worked.
3. The shaving of hours was intentional, willful and done for the pecuniary gain of Dusk management and ownership and with the knowledge of ownership defendants.

4. The intentional shaving of hours was in violation of New Jersey wage and hour laws as well as New Jersey Common law.

Wherefore plaintiffs demand judgment against defendants jointly and severally for compensatory damages, punitive damages, liquidated damages, counsel fees, costs, and such other relief as the court deems equitable and just

## COUNT SEVEN CEPA AS TO PATRICK ODONNELL

1. Plaintiffs repeat the allegations of Counts One through Six and makes them a part herein
2. On December 16, 2011 Patrick O'Donnell was terminated from his employment with Dusk via an email sent to him by defendant Eric Millstein with a carbon copy to Defendant James Wankmiller.
3. The termination was the direct result of, in retaliation for and subsequent to: plaintiff's complaints to management and bottle server defendants as well as to Union local 54 about not receiving the proper amount of the nightly tip pools which plaintiff reasonably believed to have been the result of fraud; complaints to management defendants and local 54 pertaining to violations of the CBA in terms of being forced to perform cleaning duties specifically prohibited by the CBA; complaints to management and local 54 for violations of the CBA in terms of not establishing a tip committee as required under the CBA, complaints to management and local 54 about not receiving full minimum wages for non-tipped work which plaintiff reasonably believed to have been in violation of wage and hour laws; reporting to management and local 54 the assault against him by defendant Craig Slotkin of October 31, 2011 which plaintiff reasonably believed to be in violation of New Jersey's simple assault statute and for threatening to file a complaint against Craig Slotkin for simple assault in Atlantic City Municipal court; Complaints to Dusk management and ownership and reporting to local 54 that Dusk had willfully and intentionally not paid any financial benefits to any of its union members since signing the CBA including vacations pay, holiday pay, earned attendance pay, personal day pay; and contractual overtime pay which plaintiff reasonably believed was the result of fraud and in violation of New Jersey criminal statutes pertaining to theft ; for threatening Dusk management defendants with complaints to the New Jersey Department of labor for the wage and hour violations; for threatening to file disorderly person complaints against Dusk management defendants for violations of NJSA 40A-2 which makes it a disorderly persons offense to fail to pay wages or benefits due under a CBA within 30 days from the date the are due; for threatening to file and for filing a complaint with the U.S. Department of labor when it was discovered that Dusk had not made any required contributions to the union's severance fund on behalf of plaintiff or any other past or current union employee which plaintiff reasonably believed was contrary to civil and criminal statutes pertaining to ERISA; for advising other union employees that Dusk had intentionally committed CBA and wage and hour violations and that Defendant Craig Slotkin had pushed him on October 31, 2011.

4.  Prior to termination and subsequent to the aforementioned complaints, plaintiff was not assigned to work any private parties at Dusk as he had been on every occasion wherein there had been a private party at Dusk prior to the complaints.

5.  Private parties such as bar mitzvahs and other social events took place at the club during non-regular shift hours and were an opportunity for employees to earn additional pay.

6.  The non-scheduling of plaintiff for private parties was in retaliation for plaintiff making the aforementioned complaints and constituted a negative employment consequence to him.

7.  Plaintiff's not being scheduled for private parties due to the aforementioned complaints and his subsequent termination violated the provisions of CEPA, N.J.S.A. 34:19-1, *et seq*

Wherefore plaintiff demands judgment against management and ownership defendants jointly and severally for compensatory damages, punitive damages, past and future wages and benefits, emotional distress, counsel fees, costs and such other relief as the Court deems equitable and just.

## COUNT EIGHT CEPA VIOLATION AS TO BRIAN FIDANZATO

1.  Plaintiffs repeat the allegations of Counts One through Seven and makes them a part herein

2.  On or about June of 2009 plaintiff Brian Fidanzato, a friend of Patrick O'Donnell since grade school, was referred to Dusk for possible employment by Patrick O'Donnell and was in fact hired as a bus person by Dusk.

3.  At a point in 2010, plaintiff was promoted by Dusk to tipped euro.

4.  After promotion, plaintiff complained to Dusk management and bottle server defendants about not receiving the proper amount of the nightly tip pools which plaintiff reasonably believed to have been the result of fraudulent conduct on the parts of defendants, being forced to perform cleaning duties prohibited under the CBA and not being paid the higher minimum wage rate for the non-tipped work which plaintiff reasonably believed to be in violation of applicable wage and hour laws.

5.  Subsequent to said complaints plaintiff was not assigned to work any private parties at Dusk as he had been on numerous occasions prior to the complaints.

6.  Private parties such as bar mitzvahs and other social events took place at the club during non-regular shift hours and were an opportunity for employees to earn additional pay.

7.  The non-scheduling of plaintiff for private parties was in retaliation for plaintiff making the aforementioned complaints and constituted a negative employment consequence to him.

8.  On or about 2012, plaintiff was constructively terminated by Dusk when Dusk did away with the tip euro position and combined it with the buser classification which resulted in plaintiff's take home income being fifty percent less than what it had been prior to the change.

9.  Doing away with the tip euro position was the direct result of, in retaliation for and subsequent to: plaintiff's complaints to Dusk management and bottle server

defendants about not receiving the proper amount of the nightly tip pools which plaintiff reasonably believed to be the result of fraudulent conduct, being forced to perform cleaning duties prohibited under the CBA and not being paid the higher minimum wage rate for the non-tipped work which plaintiff reasonably believed to be in violation of applicable wage and hour laws;

10. Plaintiff's no longer being scheduled to work private parties and termination violated the provisions of CEPA, N.J.S.A. 34:19-1, *et seq*

Wherefore plaintiff demands judgment against management and ownership defendants jointly and severally for compensatory damages, emotional distress, punitive damages, past and future wages and benefits, counsel fees, costs and such other relief as the Court deems equitable and just.

## COUNT NINE JOHN DOE

1. Plaintiffs repeat the allegations of Counts One through Eight and makes them a part herein

2. John Doe 1-10 are fictitiously named defendants respectively representing any persons and/or business entities which had ownership and/or control of any of the instrumentalities of the damages complained of herein or who are otherwise liable for the damages complained of herein. The plaintiffs reserve their right to amend this complaint to implead the actual names of such persons and/or business entities should the identity and/or liability of same be revealed during the course of discovery herein.

   **WHEREFORE,** the plaintiff demands judgment against the defendants herein,

for compensatory damages , liquidated damages, counsel fees, plus costs of suit.

## DESIGNATION OF TRIAL COUNSEL

TO:  Assignment Judge

In accordance with Rule 4:25-4 you are hereby notified that Michael R. O'Donnell is assigned to try this case.

## JURY DEMAND

The plaintiff hereby demands a trial by jury as to all issues herein.

## CERTIFICATION

I hereby certify that there is no prior litigation pending with regard to this case and that all concerned parties have been named in this pleading.

MICHAEL R. O'DONNELL, ESQ.

DATED:  July 16, 2012

## DEMAND FOR INSURANCE INFORMATION

Plaintiff(s) hereby demand, pursuant to R. 4:10-2(b), disclosure to the undersigned whether there are any insurance agreements or policies which may be liable to satisfy in part or all of a judgment which may be entered in this action against the defendant(s), or to indemnify or reimburse for payments made to satisfy the judgment and provide, under oath or certification: (a) number of the said policy; (b) name and address of insurer or issuer; (c) inception and expiration dates; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; (g) medical payment limits; (h) uninsured/underinsured policy limits; (I) name and address of person who has custody and possession thereof; (j) where and when each policy or agreement can be inspected.

MICHAEL R. O'DONNELL, ESQ.
Attorney for Plaintiff(s)

DATED: July 16, 2012

CONSTANGY, BROOKS & SMITH, LLP
John E. MacDonald
100 Overlook Center, 2nd Floor
Princeton, New Jersey 08540
jmacdonald@constangy.com
Telephone: (609) 357-1183
Facsimile: (609) 357-1196
*Attorneys for Defendants*



| | |
|---|---|
| PATRICK M. O'DONNELL, BRIAN FIDANZATO, <br><br> Plaintiffs, <br><br> *vs.* <br><br> Nightlife, DBA Dusk, Red Stripe Planes Group, James Wankmiller, Gary Veloric, Eric Millstein, Kevin Friel, Craig Slotkin, Justin Lotter, Kevin Scanlon, Chelsea Fleming, Brooke Ashcroft, Ashley Costello, Amanda Grill, Kelly Schweir, Sarrah Louise Dilenno, Ashley Knight, Liana Williams and John Does 1-10 (a fictitious name for persons, firms or corporations presently unknown), <br><br> Defendant(s). | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY DOCKET NO. SOM-L-398-12 <br><br> CIVIL ACTION <br><br> ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT, SEPARATE DEFENSES, DEMAND FOR STATEMENT OF DAMAGES AND DEMAND FOR DOCUMENTS ON BEHALF OF DEFENDANTS |

Defendants, A. C. Nightlife, LLC (improperly pled as "Nightlife, DBA Dusk"), Red

Stripe Plane Group (improperly pled as "Red Stripe Planes Group"), James Wankmiller, Gary

Veloric, Eric Millstein, Kevin Friel, Craig Slotkin, Justin Lotter, Kevin Scanlon, Chelsea

Fleming, Brooke Ashcroft, Ashley Costello, Amanda Grill, Kelly Schweir, Sarrah Louise

Dilenno, Ashley Knight and Liana Williams (hereinafter collectively "Defendants"), by and

through their undersigned attorneys, and in Answer to Plaintiffs' Second Amended Complaint (the

"Complaint"), state as follows:

## AS TO THE INTRODUCTION

1.      Respecting the first paragraph of the introduction to the Complaint, Defendants admit that Plaintiffs are "former employees" of "Dusk" nightclub. Defendants lack knowledge or information sufficient to form a belief respecting the truth of the allegations respecting Plaintiffs' current residences. Defendants deny all remaining allegations in the first paragraph of the introduction of the Complaint.

2.      Defendants deny the allegations contained in the second paragraph of the introduction to the Complaint.

## COUNT ONE WILFUL [sic] BREACH OF CONTRACT

1.      Except to admit that "[i]n April of 2009" plaintiff O'Donnell "participated in interviews" "with members of the Dusk management team," Defendants deny the allegations contained in Paragraph 1 under Count One of the Complaint.

2.      Defendants deny the allegations in Paragraph 2 under Count One of the Complaint.

3.      Defendants deny the allegations in Paragraph 3 under Count One of the Complaint.

4.      Defendants deny the allegations in Paragraph 4 under Count One of the Complaint.

5.      Defendants deny the allegations in Paragraph 5 under Count One of the Complaint.

6.      Defendants deny the allegations in Paragraph 6 under Count One of the Complaint.

7.      Defendants deny the allegations in Paragraph 7 under Count One of the Complaint.

8.      Defendants deny the allegations in Paragraph 8 under Count One of the Complaint.

9.      Defendants deny the allegations in Paragraph 9 under Count One of the Complaint.

10.     Defendants deny the allegations in Paragraph 10 under Count One of the Complaint.

11.     Defendants deny the allegations in Paragraph 11 under Count One of the Complaint.

12.     Paragraph 12 under Count One of the Complaint contains statements regarding the nature of the case, which require neither admission nor denial by Defendants. To the extent, however, said Paragraph alleges and/or implies that Defendants are liable to Plaintiffs in any way, said allegations and/or implications are denied.

<u>COUNT TWO FRAUD</u>

1.     Defendants repeat and reallege their responses to all preceding paragraphs as if fully set forth at length herein.

2.     The allegations contained in Paragraph 2 under Count Two of the Complaint are vague and unintelligible and, therefore, no response is required.   To the extent a response is necessary, Plaintiffs' allegations are denied.

3.     Defendants deny the allegations in Paragraph 3 under Count Two of the Complaint.

4.     Defendants deny the allegations in Paragraph 4 under Count Two of the Complaint.

5.     Defendants deny the allegations in Paragraph 5 under Count Two of the Complaint.

6.     Paragraph 6 under Count Two of the Complaint contains statements regarding the nature of the case, which require neither admission nor denial by Defendants.  To the extent, however, said Paragraph alleges and/or implies that Defendants are liable to Plaintiffs in any way, said allegations and/or implications are denied.

<u>COUNT THREE WAGE AND HOUR</u>

1.     Defendants repeat and reallege their responses to all preceding paragraphs as if fully set forth at length herein.

2.     Defendants deny the allegations in Paragraph 2 under Count Three of the Complaint.

3.     Defendants deny the allegations in Paragraph 3 under Count Three of the Complaint.

4.     Defendants deny the allegations in Paragraph 4 under Count Three of the Complaint.

-3-

5.    Defendants deny the allegations in Paragraph 5 under Count Three of the Complaint.

## COUNT FOUR TIP POOL WAGE AND HOUR VIOLATIONS

1.    Defendants repeat and reallege their responses to all preceding paragraphs as if fully set forth at length herein.

2.    Defendants deny the allegations in Paragraph 2 under Count Four of the Complaint.

3.    Defendants deny the allegations in Paragraph 3 under Count Four of the Complaint.

## COUNT FIVE ASSAULT

1.    Defendants repeat and reallege their responses to all preceding paragraphs as if fully set forth at length herein.

2.    Defendants deny the allegations in Paragraph 2 under Count Five of the Complaint.

3.    Defendants deny the allegations in Paragraph 3 under Count Five of the Complaint.

4.    The allegations contained in Paragraph 4 under Count Five of the Complaint require a legal conclusion and, therefore, no response is necessary.  To the extent, however, said Paragraph alleges and/or implies that Defendants are liable to Plaintiffs in any way, said allegations and/or implications are denied.

## COUNT SIX SHAVING OF HOURS

1.    Defendants repeat and reallege their responses to all preceding paragraphs as if fully set forth at length herein.

2.    Defendants deny the allegations in Paragraph 2 under Count Six of the Complaint.

3.    Defendants deny the allegations in Paragraph 3 under Count Six of the Complaint.

4.    Defendants deny the allegations in Paragraph 4 under Count Six of the Complaint.

## COUNT SEVEN CEPA AS TO PATRICK O'DONNELL

1.    Defendants repeat and reallege their responses to all preceding paragraphs as if fully set forth at length herein.

2.    Except to admit that on or about "December 16, 2011[,]" Plaintiff O'Donnell "was terminated from his employment with Dusk[,]" Defendants deny the allegations contained in Paragraph 2 under Count Seven of the Complaint.  Defendants further specifically deny Paragraph 2 under Count Seven of the Complaint to the extent it alleges and/or implies that Defendants are liable to Plaintiffs in any way.

3.    Defendants deny the allegations in Paragraph 3 under Count Seven of the Complaint.  Further, Defendants specifically deny any unlawful "retaliation" against Plaintiffs for any reason.

4.    Defendants deny the allegations in Paragraph 4 under Count Seven of the Complaint.

5.    The allegations contained in Paragraph 5 under Count of Seven of the Complaint are vague and unintelligible and, therefore, no response is required.  To the extent a response is necessary, Plaintiffs' allegations are denied.

6.    Defendants deny the allegations in Paragraph 6 under Count Seven of the Complaint.

7.    Defendants deny the allegations in Paragraph 7 under Count Seven of the Complaint.

## COUNT EIGHT CEPA VIOLATION AS TO BRIAN FIDANZATO

1.    Defendants repeat and reallege their responses to all preceding paragraphs as if fully set forth at length herein.

2.      Except to admit that Plaintiff Fidanzato was "hired as a bus person by Dusk[,]" Defendants deny the allegations in Paragraph 2 under Count Eight of the Complaint.

3.      The allegations contained in Paragraph 3 under Count of Eight of the Complaint are vague and unintelligible and, therefore, no response is required.  To the extent a response is necessary, Plaintiffs' allegations are denied.

4.      Defendants deny the allegations in Paragraph 4 under Count Eight of the Complaint.

5.      Defendants deny the allegations in Paragraph 5 under Count Eight of the Complaint.

6.      The allegations contained in Paragraph 6 under Count of Eight of the Complaint are vague and unintelligible and, therefore, no response is required.  To the extent a response is necessary, Plaintiffs' allegations are denied.

7.      Defendants deny the allegations in Paragraph 7 under Count Eight of the Complaint.

8.      Defendants deny the allegations in Paragraph 8 under Count Eight of the Complaint.

9.      Defendants deny the allegations in Paragraph 9 under Count Eight of the Complaint.

10.     Defendants deny the allegations in Paragraph 10 under Count Eight of the Complaint.

## COUNT NINE JOHN DOE

1.      Defendants repeat and reallege their responses to all preceding paragraphs as if fully set forth at length herein.

2.      Paragraph 2 under Count Nine of the Complaint is not directed at Defendants and, therefore, no response is necessary.  To the extent, however, said Paragraph alleges and/or implies that the named Defendants are liable to Plaintiffs in any way, said allegations and/or implications are denied.

### GENERAL DENIAL

Defendants deny all allegations of Plaintiffs' Complaint, express or implied, that are not specifically and expressly admitted above.

WHEREFORE, Defendants request judgment dismissing the Complaint against them with prejudice, together with their attorneys' fees, costs of suit and such other and further relief as the Court deems appropriate.

### SEPARATE AFFIRMATIVE DEFENSES

Defendants, having fully answered Plaintiffs' Complaint, set forth the following Separate Affirmative Defenses:

### FIRST SEPARATE AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against Defendants upon which relief can be granted.

### SECOND SEPARATE AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of punitive damages can be granted.

### THIRD SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs' punitive damages claims are barred because Defendants at no time engaged in any practices or actions with malice or with reckless disregard for Plaintiffs' or other employees' rights.

### FOURTH SEPARATE AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of attorneys' fees can be granted.

### FIFTH SEPARATE AFFIRMATIVE DEFENSE

The Complaint, and each alleged claim contained therein, is barred in whole or in part by all applicable statutes of limitations.

## SIXTH SEPARATE AFFIRMATIVE DEFENSE

Any claim for minimum wage and/or overtime liability for a period in excess of two years prior to filing of the Complaint is barred by the applicable statute of limitations.

## SEVENTH SEPARATE AFFIRMATIVE DEFENSE

Some or all of the disputed time for which Plaintiffs seek recovery of wages purportedly owed is not compensable pursuant to the *de minimis* doctrine.

## EIGHTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs have waived any claim they may have, which is denied, to seek relief against Defendants.

## NINTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs have released any claim they may have, which is denied, to seek relief against Defendants.

## TENTH SEPARATE AFFIRMATIVE DEFENSE

The Complaint, and each purported claim contained therein, is barred by the doctrine of unclean hands.

## ELEVENTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs' claims for minimum wage and/or overtime liability fail because tips are not included within the definition of "wages" pursuant to the cited law.

## TWELFTH SEPARATE AFFIRMATIVE DEFENSE

Any claim for minimum wage and/or overtime liability is barred as Defendants were at all times acting in good faith in conformity with and reliance upon written administrative regulations, orders, rulings and interpretations of the Administrator of the Wage and Hour Division of the U.S. Department of Labor and/or the New Jersey Department of Labor.

## THIRTEENTH SEPARATE AFFIRMATIVE DEFENSE

If Plaintiffs are able to establish that they worked any hours for which they were not properly paid, such activity was without the knowledge and contrary to the instructions of Defendants, and they are equitably estopped from asserting a claim that was created, if at all, by their own misconduct.

## FOURTEENTH SEPARATE AFFIRMATIVE DEFENSE

Defendants employed Plaintiffs on an at-will basis and, therefore, could terminate their employment at any time with or without notice and with or without cause.

## FIFTEENTH SEPARATE AFFIRMATIVE DEFENSE

Assuming cause was necessary to terminate Plaintiffs' employment, which Defendants deny, then Defendants had just cause for the termination of her employment.

## SIXTEENTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs are estopped and barred by their own conduct from recovering any relief.

## SEVENTEENTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs are barred from relief due to their failure to mitigate damages.

## EIGHTEENTH SEPARATE AFFIRMATIVE DEFENSE

Insofar as Plaintiffs purport to allege a claim or claims for negligence or for physical or mental and emotional distress, including claims for recovery of any medical expenses thereby incurred, said claims are barred by the exclusive remedy provisions of the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-1 et seq.

## NINETEENTH SEPARATE AFFIRMATIVE DEFENSE

Defendants relied on legitimate factors other than purported unlawful retaliation in terminating Plaintiffs' employment.

### TWENTIETH SEPARATE AFFIRMATIVE DEFENSE

This action is barred by the doctrine of laches.

### TWENTY-FIRST SEPARATE AFFIRMATIVE DEFENSE

The Complaint is barred by the exclusive remedy provisions of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.

### TWENTY-SECOND SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs' claims for relief against the individual Defendants in their individual capacities must be dismissed because the individuals are not "employers" within the meaning of New Jersey's Conscientious Employee Protection Act and not subject to personal liability thereunder.

### TWENTY-THIRD SEPARATE AFFIRMATIVE DEFENSE

The alleged incidents of which Plaintiffs complain and all alleged damages, if any, were caused by the actions and/or inactions of third persons over which Defendants had no control.

### TWENTY-FOURTH SEPARATE AFFIRMATIVE DEFENSE

If an agreement of employment existed between Defendants and Plaintiffs, which Defendants deny, recovery on any purported contract is barred because Plaintiffs committed a prior breach, excusing any duty of further performance by Defendants.

### TWENTY-FIFTH SEPARATE AFFIRMATIVE DEFENSE

Assuming an agreement of employment existed between Defendants and Plaintiffs, which Defendants deny, any failure by Defendants to perform any obligations resulted from Plaintiffs' failure to perform their own obligations as required by the terms of that alleged agreement, and the performance on Plaintiffs' part of their own obligations was a condition precedent to or concurrent with the performance of Defendants' obligations.

## TWENTY-SIXTH SEPARATE AFFIRMATIVE DEFENSE

Recovery based on any alleged employment agreement or contract, to the extent it relies on any oral statement(s), is barred by the statute of frauds.

## TWENTY-SEVENTH SEPARATE AFFIRMATIVE DEFENSE

The Complaint is barred by the doctrine of accord and satisfaction.

## TWENTY-EIGHTH SEPARATE AFFIRMATIVE DEFENSE

Plaintiffs are barred from relief by their failure to pursue or exhaust their claims through arbitration.

## TWENTY-NINTH SEPARATE AFFIRMATIVE DEFENSE

Recovery based upon any theory which relates to or relies upon the terms of a labor contract is barred and preempted by the Labor Management Relations Act, 29 U.S.C. § 141 et seq., and must, therefore, be dismissed.

## THIRTIETH SEPARATE AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of liquidated damages can be granted.

## RESERVATION OF DEFENSES

Defendants hereby reserve the right to assert such additional defenses as may become apparent during the course of discovery.

CONSTANGY, BROOKS & SMITH, LLP

By: _____

JOHN E. MACDONALD
A Member of the Firm

Dated: August 29, 2012

## DEMAND FOR STATEMENT OF DAMAGES

Pursuant to R. 4:5-2, Defendants demand service upon the undersigned within five (5) days of receipt hereof of a Statement of Damages claimed in each Count of the Complaint.

John E. MacDonald

Dated: August 29, 2012

## DEMAND FOR DOCUMENTS

Pursuant to R. 4:18-2, Defendants demand service upon the undersigned within five (5) days of the date hereof of any document or paper referred to in the Complaint.

John E. MacDonald

Dated: August 29, 2012

## DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4 of the New Jersey Rules of Civil Practice, John E. MacDonald, of the law firm of Constangy, Brooks & Smith, LLP, is hereby designated as trial counsel.

John E. MacDonald

Dated: August 29, 2012

-12-

## CERTIFICATION PURSUANT TO RULE 4:5-1

The undersigned hereby certifies that the within matter in controversy is not the subject of any other pending or contemplated court action or arbitration proceeding and knows of no additional parties who should be joined in this action.

_____

John E. MacDonald

Dated: August 29, 2012

## CERTIFICATION UNDER RULE 4:6

The undersigned hereby certifies that this pleading was served within the time provided by Rule 4:6 of the New Jersey Rules of Civil Practice, or within an extension consented to by counsel for plaintiff.

_____

John E. MacDonald

Dated: August 29, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th of August 2012, I caused a true and correct copy of the foregoing Answer to Plaintiffs' Second Amended Complaint, Separate Defenses, Demand for Statement of Damages and Demand for Documents on Behalf of Defendants via hand-delivery upon:

Michael R. O'Donnell, Esq.
66 Finderne Avenue
Bridgewater, new Jersey 08807
*Attorney for Plaintiffs*

_____
John E. MacDonald

<u>Appendix XII-B1</u>



## CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
| --- | --- | --- |
| John E. MacDonald | (609) 357-1183 | Somerset |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
| --- | --- |
| Constangy Brooks & Smith, LLP | SOM-L-398-12 |

| OFFICE ADDRESS | DOCUMENT TYPE |
| --- | --- |
| 100 Overlook Center, 2nd Floor, Princeton, NJ 08540 | Answer |
| | JURY DEMAND   ☐ Yes   ■ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
| --- | --- |
| Defendants | PATRICK M. O'DONNELL, BRIAN FIDANZATO v. Nightlife, DBA Dusk, et al. |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ■ NO |
| --- | --- |
| 616 | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING?   ☐ Yes   ■ No | IF YES, LIST DOCKET NUMBERS |
| --- | --- |

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?   ☐ Yes   ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)   RSUI Group | ☐ NONE ☐ UNKNOWN |
| --- | --- | --- |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?   ■ YES   ☐ No | IF YES, IS THAT RELATIONSHIP:   ■ EMPLOYER/EMPLOYEE   ☐ FAMILIAL | ☐ FRIEND/NEIGHBOR   ☐ BUSINESS | ☐ OTHER (explain) |
| --- | --- | --- | --- |

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ■ YES   ☐ No |
| --- |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?   ☐ Yes   ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
| --- | --- |
| WILL AN INTERPRETER BE NEEDED?   ☐ Yes   ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: